The trial court erred because the Secretary lawfully authorized a reduction in the Coast 400 enlisted members for involuntary retirement with full retirement benefits. They were convened for this purpose pursuant to the Secretary's memoranda issued in 2012, 13, and 14 that specifically invoked her reduction in force authority under Section 357J. And notably, your honors, there is no dispute that the Coast Guard had a legitimate reason for conducting these cribs to rebalance and to ensure the proper functioning of the enlisted military force. My first question, looking at Section 1169, it looks like it sets out terms when enlisted members of the armed forces can be discharged. And the first one says as prescribed by the Secretary. And then when we look at the other statute that's been invoked here, there is another prescription by the law. And that's in Section 357. And it's provided there how such discharges take place. So why don't we just stop there? I mean, it's obvious that the Secretary has broad discretion. And the Secretary has acted within that discretion. And I don't know if that's a dispute or not. Your honor, I couldn't agree more. Just like this court determined in Alton, when there is a legitimate military purpose exercised to involuntarily separate enlisted members, that is largely the end of the inquiry. Can I ask, I was wondering as I was reading the briefs, I think something a little bit similar, but I don't see you having made any argument that 1169 supports, justifies what is challenged here, even if what is challenged here falls outside 357J. Well, your honor, the Secretary invoked both authorities, 1169 and 357. I didn't ask about what the Secretary did. I asked about what you argued. I don't see you having made an argument that even if the claims court is right about 357J, so that this was in fact a reduction in force, that the Secretary could do this under 1169. We did make that argument, your honor. And we cited Lipman for that purpose, I believe, in our opening brief. We talked about 11, on page 12 of our opening brief, we talked about 1169. I know you talk about it. And we argue, your honor, if I may, I didn't mean to talk over you, 1169 conferred upon the Secretary the authority to prescribe crisps for the involuntary retirement of enlisted Coast Guard members. See 1169 and Lipman. Right, but in order for the answer to my question to be what I think would help you if applied, you would have to say that these crisps could proceed even in violation of 357J. No, we're not arguing that. Okay, so the question is whether 357J applies or not. Certainly, certainly. And Congress did not define reduction in force in 357J or Title 14. But we know what Congress meant, because dictionaries speak directly to the plain language, meaning in the military context. For example, in the military context, Webster's defines a force as the troops that are assigned. So this made me think this kind of argument, taking a phrase, splitting it into parts, looking at dictionaries for the parts, and then putting it back together made me think of a 2011 Supreme Court decision, you may know it, FCC against AT&T, in which what was at issue was the phrase personal privacy in FOIA, the personal privacy exemption. And the argument was made, unanimously rejected by the Supreme Court, that the question was whether a corporation's confidentiality interest could qualify. And the argument was made, and I think accepted by the lower court, that if you had personal privacy and you divide it up, well, persons include corporations. Corporations have confidentiality interests. And the Supreme Court said, that's not what you do with a lot of phrases. That's not what you're going to do with this phrase. Why aren't you doing the same thing that the Supreme Court said there should you do? Reduction in force is a phrase that stands as a unit with an extremely well-established meaning. Well, Your Honor, we don't need to slice and dice reduction in force, because we also have, in the record, the Random House Dictionary defines a reduction in force as a reduction in the military context, a reduction in the personnel of an armed service, or the discharge of a person from military service. Now, these definitions, they're all consistent, and they don't say anything about military billets. They speak in terms of the troops and the military personnel that were discharged from service. And in this respect, the dictionary definitions are entirely consistent with the statutory scheme. That particular definition is an informal usage of RIF, right? And it's in the verb form? Well, the use of it as an acronym, yes. Right, but it says informal verb or something like that. That's right, because it's being used as an acronym. And it also says especially for economy reasons, right? That's right. I didn't hear you read that off, but that's the tail end of that definition, right? Yes, indeed. And that was a big factor here as well. Simultaneous with the reduction in... What do we do with the fact that at the time this statute 357J was enacted, there was already a lot of case law in the books, especially our own case law, that did in fact provide a clear understanding of this term reduction in force. I understand it's in a different context. It's in a federal civil context, not a military context. But nevertheless, it seems like, aren't we supposed to presume that Congress is well aware of well-established understandings of terms that have been already provided a definition for through court case law? Well, to do that, and that's sort of the way that we respectfully submit the trial court lost its in following this court's precedence in MSPB proceedings. But all of those MSPB cases involved OPM's regulations, not a congressional statement of what constitutes a reduction in force. In fact, this court in the cross case recognized that Congress has not specified the circumstances when a reduction in force is appropriate. And so the entire landscape in those MSPB cases of discussions of reductions in force entirely is within the framework of OPM's robust regulatory scheme for reductions in force. And none of that... particular definition proposed in the regulations? They absolutely do, Your Honor. And in fact, none of the cases actually engages in any form of statutory construction. They're simply following the regulations. But the trial court assumes two things. It assumes that the civilian and the military spheres are the same, and they're not, and I can explain that. But also assumes that you can't have a reduction in force in the civilian sphere without an elimination of a position, which is also wrong. So let me take those two assumptions on if I could. In terms of why the two situations are different, civilian and military, unlike civilian employees who are appointed to a position, military members are appointed to a position where a reduction in military billets does not reduce the number of military members in the force. Those military members are in a different posture. They serve on enlistment contracts and are not tied to a particular billet. And they're... Ms. Tippins, she had a particular position, didn't she? She had some kind of pizza kitchen manager position or something? I'm sure she served in a billet, but military members, they follow orders. They serve in a billet, and their billet assignments change all the time. It's completely different from a situation in the civil service where you are appointed to a position. That position exists in the civil service, and the civil service is comprised of those positions to which people are appointed. Another question I have is about the overall structure of Section 357. I don't quite yet understand your understanding of 357J's reduction in force in the context of everything else that's going on in 357B through I, which is clearly providing a lot of due process to these service members before they are retired. It seems like there's really nothing left for 357B through I to do. The government would never need to go through all this due process before retiring someone. Not quite, Your Honor. It is always true that whenever you have an exception, the rule does not apply. The rule set forth in 357A through H applies unless the secretary, from the very apex of military authority in the Coast Guard, invokes her reduction in force authority, then those other provisions do not apply. Why wouldn't the provision, Jay, just say the secretary, if it is actually the secretary, may decide not to follow A through H? What's the phrase reduction in force doing here? Well, the 357 provides that those other provisions are inapplicable when the secretary orders... I guess I'm picking up on at least a version of Judge Chen's question. Under your view, why wouldn't 357J say the secretary, however, may decide involuntarily to retire the covered Coast Guard people independently of B, A through H provisions? Well, that is phrasing that I just used. Never mention reduction in force. I suppose Congress could have said that, but the way the scheme works is the secretary can, under 1169, involuntarily separate any enlisted member as the secretary may prescribe. The limitations in 357A through H on that authority do not apply when the secretary orders a reduction in force. Then you're back in 1169 territory, the secretary has broad military discretion. That's part of the problem with this trial court's decision. The trial court intruded on the military's discretion. This court has held that courts do not review military decisions unless Congress has established tests or standards against which the court can measure the secretary's conduct. Okay. You're welcome to vote. Oh, yes. Thank you, Your Honor. Mr. Maimon. Good morning, Your Honors. May it please the court, Nathan Maimon on behalf of the plaintiffs. I'd like to start, if I may, with something that Mr. Edelcheck said, that striving military members as being enlisted to contracts and not appointed positions. There's nothing that started the breach for that. He didn't identify anything today, and that's actually not correct. If you look at the way the Coast Guard is organized, like other military services, the Coast Guard is organized by a hierarchy of organizations with positions. Coast Guard Commandant has a manual that it publishes called the Coast Guard Personnel Allowance List that identifies that every military is a highly organized organization. Everyone's assigned to a position. So it's not simply correct. Is that we're getting a preview that billet is synonymous with position for present purposes? I believe that's correct. If there's any question in the Coast Guard, the manual is just referring to the Commandant Personnel Allowance Manual. Commandant Instruction M-53-12-14, billet is identified as a personnel allowance for assignment of a military member. So no one, I think, is disputing that a billet in this context is a position. And the fact that matters, because the argument I understand it is, well, you have all these enlisted, and if you reduce the positions in the Coast Guard for enlisted, then you wouldn't be enlisted personnel. Except if you reduce the positions, that then provides the authority under 357 and under Coast Guard manuals for then deciding you no longer need those enlisted personnel. And enlisted personnel can be discharged before the end of enlistment. You can not renew enlistments. I mean, there's ways that the existence of positions does directly affect number of... I understand that this whole CRISPR process is a method to remove, let's say, deadwood, or to create an upward advancement, a path of mobility for younger officers. So you discharge some of the members that have years of experience, and you clear their positions for the younger officers. Is that correct so far? For the younger enlisted, that was what's been... Let me take you for a minute. Why would you eliminate, for these purposes, why would you eliminate billets? If you do that, then there is no place for the younger officers to upgrade to. I'm not saying that the Coast Guard would eliminate billets, but the question, I think, is the protection that Congress saw fit to give to the senior enlisted individuals who served 20 years. It's not that the Coast Guard doesn't have tools. It's not that the Coast Guard couldn't decide to use its tools within the boundaries of law to make space for promotions, but it has to follow the law that Congress said that if we have Coast Guard members with 20 years of service, they're entitled to protection. And to Judge Ranney, to your point, it's the exact fact that they identify these boards as performance boards, that's the issue. Because if you look at 357, to the other judge's questions, 357A through I... They were not discharged of performance criteria. Respectfully, I disagree with that. If you look at the instructions that the board was given... They were not discharged because they had an unlawful discharge or under court martial or anything like that. They were simply discharged because they had over 20 years of experience and I guess the Coast Guard wanted those billets for younger officers. The Coast Guard, the criteria that the Coast Guard applied for identifying who it would force to retire, it called them a performance and conduct based panel. And that's an appendix 46 appendix 59 through 60. The criteria that they used to identify who they thought should no longer serve was performance. And if you look at what 357, I believe it is B or A1 or B says, if you're not doing a reduction in force and if you're identifying for performance reasons, then there's protections that the Congress also provides. If you're discharging on the basis of performance, is that a CRISPR issue? I'm sorry, if you're discharging on the basis of performance... Is this... Why do we have to get into this whole question about reduction in force? Because... Because... No one is disputing that the secretary can discharge officers or members on the basis of performance. Except they have to follow the boundaries and protections of 357. The secretary could, the Coast Guard could have followed 357 and solved it. If we find that they were not discharged on the basis of performance, then 357 would not... Your argument is that 357 would no longer apply. I don't agree with no longer apply because you still have a fundamental point that this was not a reduction in force. And I think that the point that I'm making about the performance criteria is an indication that this is a telltale way of knowing that this was not reducing the force because it was a performance criteria, not that we have a budgetary restriction that we can no longer fund the positions that these people are in. And so we would still have that fundamental problem that the secretary's discretion is limited by statute to being a reduction in force. And if there's not a reduction in force, the secretary does not have authority to skirt the protections that these senior enlisted personnel are entitled to. Can I ask you, I guess, sort of the same question I asked Mr. Adelstein? I did not see in the government's argument here a argument to the effect that 357 as a whole just doesn't apply or in any event doesn't limit the 1069 or 1169 authority and that what happened here is independently valid under 1169 even if it would violate 357. I don't understand the government to have made that argument below. I don't understand it either here. I mean, I think the way... I thought we were at a common position that 1169 is a broad statute covered across the board, a lot of scenarios, but 357 is a very specific application that, you know, like the specific always trumps the general and here we have a specific statute that trumps what general authority... And this is essentially all of 357 has been, was repealed in 2016, maybe except for I, which got moved somewhere. Right, my understanding is all the, you know, what we're at here at issue for today is no longer in the code. It was removed in 2016 because of Coast Guard action. And so, you know, this was protections that existed. Congress saw fit to provide and, you know, Congress and they existed and were in effect and, you know, my clients were entitled to while they existed. Let's go back to this issue of the performance panels. So there, I understand that the 357 protections that you raised were triggered for professional dereliction or for performance below standards. That's when 357 protections are triggered, but those are not the standards by which these personnel were reviewed. So when you say that being the case that you can't argue that they're entitled to 357 protections, they weren't reviewed under the criteria that triggered it. Judge Ryan, I would respectfully disagree with that from the standpoint of yes, 357 B and maybe getting the particular paragraph wrong. Yes, it sets a standard that has to be met for forcefully retiring for performance reasons. The fact that, you know, that they perhaps and we don't think they could have met it for these people isn't a, isn't a, you know, a defect in the statute. It's what the statute existed to protect. That Congress protected these individuals and said that you're not going to be able to force them to retire unless it's a substantial significant performance issue. Your problem here is that your individuals don't fall within that category of protection. That sphere of protection, the 357 raisers, your class don't fall within that sphere. I respectfully disagree with that because I think they do fall in that in the sense of if you can't prove that. They're not entitled to the 357 protections. They are because they have the 20 years of service and enlisted grades. No, the 357 protections are not triggered for that. They're triggered for performance, dereliction of duty, and things of that nature. No, your honor, I think as I understand the statute, the 357 protections are triggered by the years of service and grade. The standard by which the government can force retire is if they meet those performance or dereliction standards. That's a standard that the government has to meet. The protections are these people's years in service and rank. I believe that's in paragraph A. Yes, I don't think they would meet the standard for these individuals, but that's the purpose of the statute is to say that for these people that fall in this protection of having 20 years or more of service or E7 or above, you don't get to force retire unless you meet the standard or you're doing a reduction in force. Can I just shift focus a little bit on, are there statutes that use the phrase we've got can't enforce in the civilian context or is it only a regulation? I don't know, and I apologize for not having an answer readily available. There are plenty of cases that interpret or apply in civilian statutes such as the Warren Act, such as in federal civilian practice, where reduction of force is issued. In the federal civilian, I believe Title V does use reduction of force. I think that is used there. Certainly, I believe someone mentioned that there's extremely well-established meaning of what reduction of force has been defined across cases. Yes, there are the civilian cases, but I would submit that if you look at this court's cases involving military reductions in force, they're consistent. The government cites Alpen as one of its cases. Alpen was a reduction of individuals in the Navy. As this court identified, the reason for that reduction was to meet future planned end strength controls. There was a reduction in overmanned job ratings, the positions that they held. That's an example of where reduction in positions has occurred in service. The same thing occurred in Berkeley as well, which was the case in 2002, where the reduction in force was in response to congressionally mandated reductions in the armed forces, in which the Secretary of the Air Force determined that the Secretary needed to reduce the number of positions. Certainly, you have a consistency of interpretation amongst civilian cases from this court, from Sixth Circuit, from others, that reduction of force is a reduction in positions. You have the application that we see from other examples in the military where, when there's been a reduction in force, it's been a reduction for positions. This was not that. There was no reduction in positions. The government admits that they were firing or retiring these fighters. I mean, do I understand correctly that the announced purpose of this was to get current position holders out of the positions so that those positions would be it was to keep the positions. That was the purpose. When you're not reducing positions, but you're deciding you don't want that individual in the position anymore, that's not a reduction in force. That's just firing. There may be ways that the government could do this. The Coast Guard could do this. It's natural. It can now. It has procedures that can follow. The one thing that it had to follow during this period and did not was that for these service members to fire them or force them to retire, they were entitled to an enlisted personnel board, which they did not receive. What should we do with the dictionary definition Mr. Edelsheib quoted from the military context with the term reduction in force, which doesn't say anything about eliminating positions or anything like that? Actually, I think if you look at the full what we're saying. The RIF or to RIF, we talked about that definition from the Random House to discharge a person from military or civil service, especially as part of economy program. That's the last part of it. The Webster's New International act of dismissing a person from the government employment for reasons of economy. All these definitions go back to the point we've been making, which is if there's a reduction in positions, typically done because of budgetary controls or whatever, and you're removing the position, that is a RIF. I think the definitions definitely don't support what the government has argued. I think the trial court below correctly recognized those and actually indicate that consistent with the case law, a reduction in force is a reduction in positions. Unless the court has further questions, I thank you for the time. I ask that you affirm the judgment. Thank you, Your Honor. Just a few quick points. Counsel argued that the enlisted members are enlisted to billets. That's not the case. Under 10 USC 505, unlike civilian employees that are appointed to a position, military members are appointed to a grade. Furthermore, statutes in the civilian context do not define reduction in force as this court recognized in the cross case. The trial court's error here was to graph judicial statements about OPM civilian regulations onto a military statute, 357J, but those MSPB cases have no relevance in the military context. The OPM regulations don't apply to the military, and Congress never made those provisions applicable to the military. Just so I understand, what is your definition, your bottom line definition for reduction in force you want us to adopt? We don't have to define all the exact contours. Is this basically firing an employee? That would certainly be included, Your Honor. Without question. If there's a clearer understanding I should be thinking about, I'd like to know. Because right now, I'm just translating your position to whenever the secretary wants to fire an employee. Even under OPM's regulations, which are more commonly before this court, like 5 CFR 351.201, you can have a position that's abolished, or you can have a position that's vacated, because the employee is separated and the position is left vacant. You don't have to abolish positions even in the civilian sphere. In the civilian context, reductions in force, they're basically like ice cream. They come in reduction in positions only, or you could have both. Is it ever something in which the announced purpose is to refill the active employee slot by getting rid of the incumbent? I've never heard of it in that context. Here, you have multiple things going on. It wasn't just that, Your Honor. Sure, the CRISP, we're trying to... To put it, I guess, in the other direction, aren't all of the examples where we've ever seen a reduction in force examples in which there is a slot with a fully filled active employee, and the removal of that employee is for the purpose of not, at least immediately, filling that slot. And I use slot as, active employee slot, as I think what's going on here, whether it's called a billet or a position or a grade. In the military, they're positions in the civil service that... I'm sorry, in the military, they're billets in civil service, they're positions in the military. Does that phrase apply to an employer who is eliminating a... Is firing the incumbent in a slot with the intent of filling that same slot with another person, as opposed to economizing by not filling that slot? Your Honor, I don't know, but this was economy. This was for reasons of economy. In the sense of younger and therefore lower paying positions, but that was... It's more than that, Your Honor, if you could bear with me. At the exact same time that the Coast Guard was reducing the number of personnel in the retirement eligible workforce, they were also reducing personnel throughout the force. The billets were going down, the positions, the numbers of people were going down, the numbers of retirement eligibles were going down. They were all going down because what was going on, sequestration and all the budget controls that were going on at the exact same time. This was for economy. Was that the main reason? The economy? That's where all this started, when in 2012, right before the first CRSP, the Coast Guard had more personnel than billets. Providing for the upward mobility of younger service members, that was not the purpose of social protection? It was, but they could talk and chew gum at the same time, Your Honor. They were doing multiple things, multiple tools. Was economy overwhelming the upward mobility? That was part of the picture, Your Honor. There was a lot going on at the same time. And if I could just sum up, the Secretary properly invoked 357 as authorizing the CRSP, under these circumstances, in contemporaneous written memos, from the very apex of agency authority, and because the plain meaning of reduction in force, whatever its precise contours, in the military context, it has to include the discharge of hundreds of military members. The court should vacate the judgment and remand with instructions for the trial court to enter judgment in favor of the United States. Thank you.